UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANNALISA D. W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 2:25-cv-01573-GJL

SOCIAL SECURITY DISABILITY
APPEAL ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge,

Dkt. 3. This matter has been fully briefed. *See* Dkts. 11, 13, 14.

Having considered the Administrative Record (AR) and all memoranda, the Court

concludes that the Administrative Law Judge (ALJ) erred in considering Plaintiff's subjective

symptom testimony. Had the ALJ properly considered the evidence, the ALJ may have found the

residual functional capacity (RFC) assessment should have included additional limitations. The

ALJ's error is therefore not harmless, and this matter is **REVERSED** and **REMANDED**

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration for further proceedings consistent with this Order.

## I.    PROCEDURAL HISTORY

On January 6, 2020, Plaintiff filed applications for Supplemental Security Income (SSI) benefits and Disability Insurance Benefits (DIB). AR 15, 263. Her claims were denied initially on September 8, 2020, and upon reconsideration on December 29, 2020. AR 15, 1393. On October 14, 2021, ALJ Timothy Mangrum (ALJ) entered a decision concluding that Plaintiff was not disabled. AR 24. Plaintiff's request for review of the ALJ's decision was denied on September 22, 2022, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1343.

From the Initial Decision, Plaintiff appealed to the district court, and by order entered May 18, 2023, the matter was remanded for further proceedings. AR 1396. On June 14, 2024, the ALJ, again, issued a written decision concluding that Plaintiff was not disabled. AR 1335. Plaintiff requested Appeals Council review the ALJ's decision, but her request was denied on June 17, 2025, once again, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1314. On August 19, 2025, Plaintiff filed a complaint with this Court seeking judicial review of the ALJ's decision. Dkt. 5. Defendant filed the sealed Administrative Record (AR) in this matter on October 20, 2025. Dkt. 8.

## II.    BACKGROUND

Plaintiff was born in May 1973 and was forty-five years old on January 8, 2019, her alleged date of disability onset. AR 263. Plaintiff has at least a high school education. AR 816, 821. The ALJ found that Plaintiff suffers from degenerative disc disease with multiple lumbar fusions, diabetes, and obesity. AR 1328. However, the ALJ found that Plaintiff was not disabled prior to her DLI because she had the following RFC through her date last insured:

SOCIAL SECURITY DISABILITY APPEAL ORDER - 2

> Light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs to alternate positions at will. She could remain at her workstation while alternating positions. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb stairs. She can occasionally stoop, crouch, kneel, and crawl. She should avoid concentrated exposure to excessive vibrations and hazards. She should avoid concentrated exposure to extreme cold, extreme heat, and wet or humid conditions.

AR 1331.

### III.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

In her opening brief, Plaintiff argues: (1) that the ALJ's failure to comply with the remand order from the district court constitutes a violation of the law of the case doctrine and the rule of mandate; (2) alternatively, if the scope of the remand permitted a reassessment of the RFC, the ALJ failed to properly consider the nature and intensity of Plaintiff's limitations, and

failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints; and (3) that the ALJ did not cite germane reasons to reject the lay witness statements. Dkt. 11 at 1.

**A.      Law of the Case Doctrine and Rule of Mandate**

As the Ninth Circuit has held, "the law of the case doctrine and the rule of mandate apply to social security remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* at 567. "The doctrine is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.*

The rule of mandate requires that "when a case is remanded, an agency is confined by the clear scope of the mandate, but it is free to decide any issues not foreclosed by the mandate." *Valley Hosp. Med. Ctr., Inc. v. Nat'l Lab. Rels. Bd.*, 94 F.4th 1120, 1126 (9th Cir. 2024). While "the remand order must be read holistically[,]" *Stacy*, 825 F.3d at 568, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989).

In the remand order, Judge Agot  instructed the ALJ to "[o]btain supplemental vocational expert evidence to clarify the effect of the assessed limitations on the claimant's ability to perform her past relevant work, and, if necessary, other work in the national economy" and to "[o]ffer the claimant an opportunity for a new hearing; take any further action to complete the administrative record; and issue a new decision." AR 1396. In her Reply Brief, Plaintiff acknowledges that in the prior appeal to this Court, the Court, on remand, "limited the scope of [r]emand to steps four and five" of the sequential evaluation process. Dkt. 14 at 1.

In turn, the Court observes that, pursuant to the directive offering claimant "an opportunity for a new hearing, [and to] take any further action to complete the administrative record" on remand, Plaintiff presented new evidence of her diabetes at the second hearing. AR 1353, 1784, 1786, 1790. After Plaintiff presented evidence of her diabetes, which is itself a severe impairment, the ALJ was required, pursuant to 20 C.F.R. §§ 404.1545(a), 416.945(a), to assess all of the evidence, including the new evidence of diabetes, in order to accurately determine Plaintiff's RFC.[1]

For this reason, the Court concludes that the ALJ did not violate the law of the case or the rule of mandate when it "reassessed [Plaintiff]'s RFC and obtained entirely new testimony based upon a different set of assessed limitations[,]" Dkt. 11 at 3, because the scope of the remand order itself, viewed holistically, coupled with Plaintiff's presentation of evidence upon remand and at the second administrative hearing, required the ALJ to reconsider Plaintiff's severe impairments at step two of the Social Security sequential process.

**B.      Subjective Symptom Testimony**

Next, Plaintiff argues that the ALJ "failed to properly consider the nature and intensity of [Plaintiff]'s limitations and failed to offer clear and convincing reasons for rejecting [Plaintiff]'s subjective complaints." Dkt. 11 at 5.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). The first step requires the ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably

---

[1] Had the ALJ *failed* to consider Plaintiff's diabetes, this would have been error. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

SOCIAL SECURITY DISABILITY APPEAL ORDER - 5

be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence "need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (citation omitted). "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (brackets and citation omitted). Similarly, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* at 499. Finally, an ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The specific, clear, and convincing standard, however, is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g).

Here, the ALJ found that Plaintiff suffered from several severe impairments, including degenerative disc disease with multiple lumbar fusions, diabetes, and obesity, and that these impairments "could reasonably be expected to cause the alleged symptoms." AR 1328, 1332. The ALJ concluded, however, that Plaintiff's "statements concerning the intensity, persistence

SOCIAL SECURITY DISABILITY APPEAL ORDER - 6

and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 1332. The ALJ offered three reasons for discounting Plaintiff's testimony: (1) that Plaintiff's treatment was generally conservative, (2) that Plaintiff's statements regarding her activities of daily living were inconsistent with her allegations of disabling impairments, and (3) that her allegations were not consistent with the medical records. AR 1333.

  1.  <u>Treatment Plan</u>

First, the ALJ discounted Plaintiff's subjective symptom testimony because the medical records show that Plaintiff "has engaged in little treatment since the alleged onset date other than medication and has been resistant to other recommended forms of treatment such as establishing care through a pain clinic that did not provide pain medication." *Id.*

[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Indeed, "an ALJ cannot deny benefits because of the claimant's inability to afford treatment." *Johnson v. Saul*, 848 Fed. Appx. 703, 705 (9th Cir. Mar. 12, 2021). Likewise, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. Jun. 9, 2020).

Here, evidence in the medical record shows that Plaintiff "underwent a lumbar laminectomy and discectomy in 2003, a lumbar fusion in July 2012, and implantation of spinal cord stimulator in 2015." AR 375, 378, 838, 951, 955, 1072. As the Ninth Circuit observed in *Smartt*, spinal surgery is "not 'conservative treatment[,]'" and unlike the plaintiff in that case,

SOCIAL SECURITY DISABILITY APPEAL ORDER - 7

who underwent an "initial surgical repair[,]" and the subsequent record "show[ed] both self-reported and objective improvement[,] *Smartt*, 53 F.4th at 500, here, Plaintiff has had *three* separate procedures to alleviate pain in her back, and, as will be discussed below, does not demonstrate self-reported or objective improvement in her condition. AR 375, 378, 838, 951, 955, 1072. As Plaintiff observes in her Opening Brief, "[d]espite this aggressive treatment, [Plaintiff] was diagnosed with chronic postoperative pain and received specialized pain management treatment for post-laminectomy syndrome through 2016 and 2017." Dkt. 11 at 6. AR 752, 756, 766, 770, 777, 781, 784, 787, 792, 799, 802, 807, 814, 819, 829.

Progress notes from 2018 indicate that Plaintiff "ask[ed] [her] pain specialist to fill out FMLA forms[,]" AR 529, 540, and that she "had to take a lot of time off work over the last 6 months owing to back pain . . . ." AR 539. Indeed, progress notes from 2019 indicate that Plaintiff "was fired due to FMLA issues" because "she was taking days off for back pain. 3-5 days a month to take 1-2 days off a week." AR 407, 526. In turn, medical records from 2019 indicate that after Plaintiff "was fired due to FMLA issues[, and] [s]he said that she doesn't have insurance from work anymore so she was not able to return to the Washington Center for Pain Management where she was being seen for management of her chronic pain" in 2016 and 2017. AR 526.

The ALJ's finding that Plaintiff "has been resistant to other recommended forms of treatment, such as establishing care through a pain clinic that did not provide pain medication[,]" AR 1333, ignores that Plaintiff stopped attending a pain management clinic *after* losing her job, and in turn, her health insurance. AR 526. As noted above, "an ALJ cannot deny benefits because of the claimant's inability to afford treatment[,]" *Johnson*, 848 Fed. Appx. at 705, nor

can a claimant "be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt*, 382 Fed. Appx. at 664.

As to alternative treatment plans, the Court also observes that, in pursuing treatment for her back pain, a May 2021 progress note indicates that "[o]ne of [Plaintiff]'s maintenance therapies [is] soaking in a hot tub [for] 4 hours, but that is not available to her at the moment because she cannot get out of the tub." AR 1270. In June 2023, at a "chronic pain follow up" Plaintiff reported "[l]ying down a lot to take naps when [her] pain is bad" and that she was "[t]aking additional medication, ran out 2 weeks early." AR 1738. Plaintiff also testified that she does not always use her spinal cord stimulator because "it gives her nausea if it's on[,]" AR 539, a "good reason for not [pursuing this] more aggressive treatment" modality of regularly wearing her spinal cord stimulator. *Carmickle*, 533 F.3d at 1162.

The ALJ does not identify a less-conservative treatment plan for Plaintiff to have followed—other than attending a pain clinic—which, again, the Court observes, was foreclosed to Plaintiff due to her lack of health insurance. AR 526. Plaintiff's insurance lapsed when she "was fired due to FMLA issues" because "she was taking days off for back pain. 3-5 days a month to take 1-2 days off a week." AR 407, 526. Plaintiff's treatment history does not demonstrate a conservative course of treatment that undermines her subjective symptom testimony; rather, it shows an individual who, at a June 2020 appointment, claimed that because she "has had issues with pain 'for a long time,' she state[d] 'I am just looking for some answers.' " AR 652. Pursuant to this record, Plaintiff's treatment regime "is not a proper basis for finding [her] non-credible." *Carmickle*, 533 F.3d at 1162. For these reasons, the Court concludes that the trial court erred in discounting Plaintiff's subjective symptom testimony based

upon her modalities of treatment, as the ALJ's decision was not supported by clear, cogent, and convincing findings supported by substantial evidence in the record.

### 2.    Activities of Daily Living

Next, the ALJ found that Plaintiff's activities of daily living, including serving as a "caretaker to her sister who is immunocompromised[,] . . . car[ing] for her parents until their death[s]" and "go[ing] out of town on vacation, spend[ing] time with family, and engag[ing] in hobbies such as painting" show "the need for some limitations, [but] they show that her condition has remained largely stable and controlled with medication." AR 1333.

"Daily activities may also be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of [their] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (internal quotation marks and citations omitted). The Ninth Circuit, however, has long observed "that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Indeed, "a disability claimant need not 'vegetate in a dark room' in order to be deemed eligible for benefits." *Id.* (quoting *Cooper v. Brown*, 815 F.2d 557, 561 (9th Cir. 1987)).

Here, at her hearing, Plaintiff's attorney stated that Plaintiff's parents' cancer diagnoses "would account for the trips to Ocean Shores because that's where [Plaintiff's] Mom and Dad lived. [Plaintiff] as well as her siblings and other family members tried to go to Ocean Shores as much as possible to provide care and assistance to the parents while they, while they had their cancer, which obviously led to their demise." AR 1354. As the ALJ observed, evidence in the record shows that Plaintiff visited Ocean Shores to spend time with her now-deceased parents, AR 367, 1309, but evidence in the record also shows that Plaintiff was unable to visit her parents

SOCIAL SECURITY DISABILITY APPEAL ORDER - 10

in Ocean Shores as often as she would like due to her pain, AR 367, and medical records indicate that Plaintiff reported that her visit to Ocean Shores "was nice and relaxing, except for the back pain, all was good." AR 1309. Nonetheless, in concluding that Plaintiff's activities of daily living were inconsistent with her subjective symptom testimony, the ALJ observed that Plaintiff "reported an ability to go out of town on vacation[.]" AR 1333.

Similarly, the ALJ found that Plaintiff "reported that she was going on a trip to Arizona for 2 weeks to take her daughter to college" as a reason for discounting Plaintiff's testimony. AR 1333. As to this finding, the Court observes "that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations[,]" *Reddick*, 157 F.3d at 722, nor should they be required to "'vegetate in a dark room' in order to be deemed eligible for benefits." *Id.* (citation omitted). Here, as in *Reddick*, the Court's "examination of the record shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated her symptoms." *Id.*

For this reason, the Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony based upon her activities of daily living absent "specific, clear and convincing reasons" for doing so. Had the ALJ properly considered Plaintiff's testimony, the RFC may have included additional limitations in the RFC, or the disability determination may have changed. Therefore, this error is not harmless.

3.    Consistency with Medical Records

Finally, the ALJ observed that "imaging results have shown largely stable findings and physical evaluations throughout the records generally show [Plaintiff] to be in no distress with a normal gait and fair range of motion and strength." AR 1333.

At her hearing, Plaintiff testified that "there's been some increase in her pain which has caused some decline in her physical abilities, more particularly in the length of time she can walk." AR 1353. As discussed above, medical records show that Plaintiff "underwent a lumbar laminectomy and discectomy in 2003, a lumbar fusion in July 2012, and implantation of spinal cord stimulator in 2015." AR 375, 378, 838, 951, 955, 1072. An MRI in 2014 showed "moderate neural foraminal stenosis from L4 to S1 with moderate/marked facet joint arthrosis at L2-3 through L4-5." AR 770, 793. In turn, Plaintiff "was diagnosed with chronic postoperative pain and received specialized pain management treatment" throughout 2016 and 2017. AR 752, 756, 766, 770, 777, 781, 784, 787, 792, 799, 802, 807, 814, 819, 829.

In concluding that "[i]maging results have shown largely stable findings and physical evaluations throughout the records generally show [Plaintiff] to be in no distress" the ALJ observed that "[u]pon evaluation, the claimant was observed to be in no distress" at a January 2019 appointment. AR 1332. The ALJ also identified an appointment in December 2019 where Plaintiff "reported that her functioning had improved overall and rated her pain as a 0 out of 10 in terms of severity" to support his determination that Plaintiff's subjective symptom testimony was inconsistent with the medical record. *Id.* The ALJ also found that, at an appointment in June 2020, Plaintiff "reported a burning pain that radiated down to her lower left, lower extremity but denied weakness" and that "[u]pon evaluation, [Plaintiff] was in no acute distress, she had no back spasm, and had intact range of motion." *Id.*

Despite the ALJ's determination that Plaintiff's "[i]maging results have shown largely stable findings[,]" the ALJ observed that Plaintiff "underwent a lumbar CT that month [June 2020] that showed postsurgical changes . . . and possible dis[c] herniation [sic] at L4-5 . . . ." AR

629, 1332. In other words, the CT scan from June 2020 revealed Plaintiff had possibly suffered from a herniated disc in June of 2020, a re-aggravation of her existing back injury. *Id.*

Similarly, the ALJ observed that "[d]uring a physical evaluation later that month [June 2020], [Plaintiff] was in no distress and had grossly normal exam findings" but that "[f]ollowing the evaluation, a CT myelogram was ordered that showed posterior central canal stenosis or severe foraminal narrowing, mild bulging disc midline at L3-4 and mild right paracentral bulge at L4-5 with mild narrowing at L5-S1 . . . " AR 657–58, 1332–33. In other words, despite "no distress and grossly normal exam findings" a CT scan was nonetheless ordered, and that CT scan revealed new complications in Plaintiff's back. *Id.*

Although "[c]ontradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony[,]" *Carmickle*, 533 F.3d at 1161, here, the medical record does not demonstrate "largely stable findings" nor that "physical evaluations throughout the records show [Plaintiff] to be in no distress with a normal gait and fair range of motion and strength." AR 629, 657–58, 1333. None of the aforementioned findings support the ALJ's determination that "[i]maging results have shown largely stable findings" nor that "the records generally shown [Plaintiff] to be in no distress with a normal gait and fair range of motion and strength." AR 1333. Plaintiff's testimony regarding her subjective symptoms does not contradict the medical record; therefore, the ALJ erred in discounting Plaintiff's subjective symptom testimony about the severe impairments she suffers from absent specific, clear, and convincing reasons for doing so.

The Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony absent "specific, clear and convincing reasons" for doing so. Had the ALJ properly considered Plaintiff's testimony, the RFC may have included additional limitations in the RFC,

SOCIAL SECURITY DISABILITY APPEAL ORDER - 13

or the disability determination may have changed. Therefore, the error is not harmless. Consequently, this matter must be reversed and remanded.

**C.     Lay Witness Testimony**

Plaintiff also contends that the ALJ erred by failing to "cite germane reasons to reject the lay witness statements." Dkt. 11 at 14. In the decision denying benefits, the ALJ noted that he had "considered the lay witness statement of [Plaintiff's lay witnesses]" and had "taken into account to observations and opinions of the lay witnesses, [but] the degree of impairment they described is not consistent with the imaging results and the exam findings and [are] further inconsistent with the limited recent engagement in treatment options other than medication refills." AR 1334.

The Court concludes that, because the ALJ committed harmful error in assessing Plaintiff's subjective symptom testimony, the ALJ must re-evaluate all of the medical evidence on remand. Plaintiff may be able to present new evidence and new testimony on remand and the ALJ's reconsideration of the medical evidence may impact his assessment of Plaintiff's lay witness testimony; therefore, on remand, the ALJ must reconsider Plaintiff's lay witness testimony.

## IV.     CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be

//

//

//

**REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 10th day of March, 2026.

Grady J. Leupold
United States Magistrate Judge

SOCIAL SECURITY DISABILITY APPEAL ORDER - 15